UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

**CHARLES R. HINE,**

                              **Plaintiff,**

                    **-v-**                                          **04-CV-476**

**HEWLETT-PACKARD COMPANY and
THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,**

                              **Defendants.**

✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦✦

APPEARANCES:

Iseman, Cunningham, Riester & Hyde, LLP
Brian M. Culnan, Esq., of Counsel
9 Thurlow Terrace
Albany, New York 12203
Attorneys for Plaintiff

Wilson, Elser, Moskowitz, Edelman & Dicker LLP
Peter A. Lauricella, Esq., of Counsel
677 Broadway
Albany, New York 12207
Attorneys for Defendants

**Hon. Norman A. Mordue, Chief U.S. District Judge**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

In this action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*, plaintiff seeks judgment declaring that he is eligible to receive long-term disability benefits under a policy issued by defendant The Prudential Insurance Company of America ("Prudential"). He further seeks to recover unpaid benefits. Defendants move (Dkt. No. 26) for summary judgment.

**BACKGROUND**

In 1989, plaintiff, then an employee of Digital Equipment Corp. ("Digital"), a predecessor of defendant Hewlett-Packard Co. ("HP"), applied for disability benefits under a group insurance contract issued by Prudential. Plaintiff's disability claim was based on a diagnosis of multiple chemical sensitivity, chronic fatigue, and severe allergies stemming from exposure to chemicals at work. In May 1989, Prudential advised plaintiff that he was eligible to receive benefits under the short-term disability plan. Subsequently, Prudential approved plaintiff's application for long-term disability ("LTD") coverage, effective as of November 15, 1989. The applicable policy provided benefits for an insured's "total disability"; however, benefits were limited to a period of 24 months where the disability "is caused at least in part by a mental, psychoneurotic or personality disorder."

Plaintiff continuously received LTD benefits throughout the 1990's. In September 2000, Prudential sought an independent review of plaintiff's file by Howard M. Kipen, M.D. On October 19, 2000, Dr. Kipen issued a report stating that plaintiff

> has no medically determinable limitations or restrictions based on the record provided. The record provides no physiologic basis for medical impairment, and in fact supports the absence of such impairment. While he has self-reported chemical sensitivities, he does not qualify for a diagnosis of MCS [multiple chemical sensitivity] ... because of his lifelong history of sensitivities, and possibly because of his psychiatric diagnoses of somatoform disorder, depression, and possibly hyperventilation.

By letter dated January 8, 2001, Prudential informed plaintiff that he was not eligible for LTD benefits. The letter stated that "Dr. Kipen's file review does not support that you have any medically determinable physiologic impairment that would prevent you from working. Dr. Kipen indicates that you may have some degree of psychiatric disorder[.]" Based on Dr. Kipen's report

and its own file review, Prudential found that "the medical evidence does not support medically determinable physiologic impairment severe enough to prevent you from performing 'any occupation'"; that plaintiff "may have some level [of] impairment from a psychiatric condition(s), however, the limited period of benefits for any disability caused at least in part by a mental, psychoneurotic or personality disorder ended on November 15, 1991."

Plaintiff sought reconsideration of the determination and submitted additional information. Dr. Kipen reviewed the additional submissions and, on March 11, 2002, confirmed his opinion, stating: "In summary, the records do not provide any documentation of a non-psychological impairment which might keep Mr. Hine from working." On March 19, 2002, based on Dr. Kipen's opinion and its own review of the records, Prudential determined that plaintiff "would have the physical capacity to perform any occupation[.]" Prudential further determined that plaintiff's "reactions to chemicals are in part due to a mental, psychoneurotic or personality disorder" and that plaintiff has exhausted all benefits for disabilities caused by such disorders. Thus, Prudential upheld its decision to discontinue plaintiff's LTD benefits.

Plaintiff made a second request for reconsideration, and Prudential obtained an independent review of the records by Stephen N. Gerson, M.D. On December 27, 2003, Dr. Gerson reported his opinion that plaintiff suffered from various psychological impairments including depression, somatoform disorder and anxiety disorder. Dr. Gerson noted that in some instances plaintiff's treating physicians had attributed plaintiff's condition to psychological factors. By letter dated January 23, 2004, Prudential notified plaintiff that it upheld its decision to terminate his benefits.

Plaintiff requested a third review. On March 25, 2004, Prudential again upheld the

determination to terminate his LTD benefits and noted that this determination completed the final level of appeal available.

## THE COMPLAINT

In the complaint, filed April 29, 2004, plaintiff claims that defendants' payment of LTD benefits for over nine years constituted a waiver of their right to deny coverage on the ground that he did not suffer from a physically disabling condition.  Plaintiff further contends that defendants' decision to terminate LTD benefits was "unjustified, unsupported by substantial evidence, and constitutes a breach of [plaintiff's] rights" under the plan.  Plaintiff seeks judgment declaring that he is eligible to receive long-term disability benefits under the LTD policy and seeks to recover unpaid benefits.

## THE MOTION

**Applicable law**

It is undisputed that the plan documents in issue do not specifically grant discretionary authority to the plan administrator to determine eligibility.  Thus, the administrator's eligibility decision is not entitled to deference, and this Court reviews it under a *de novo* standard.  *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *compare Fuller v. J.P Morgan Chase & Co.*, 423 F.3d 104, 106-07 (2d Cir. 2005) (applying deferential standard of review based on plan documents granting discretionary authority to the plan administrator to determine eligibility).

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the Court, viewing the

evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in nonmovant's favor, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial.  *See Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989).  If the nonmovant fails to carry this burden, summary judgment is appropriate.  *See Celotex,* 477 U.S. at 323.

Here, applying the summary judgment standard in light of the language of the plan, in order to grant summary judgment to defendants, the Court must conclude that there are no material questions of fact and that defendants have established as a matter of law that plaintiff's total disability "is caused at least in part by a mental, psychoneurotic or personality disorder."

**Waiver**

The Court rejects plaintiff's argument that, by paying his LTD benefits since 1989, defendants have waived any claim of lack of coverage.  It is well established that "a claim of waiver [can] not be used to expand the policy so that the insured 'extend[ed] its coverage to more than it originally bargained.'" *Lauder v. First Unum Life Ins. Co.*, 284 F.3d 375, 381 (2d Cir. 2002) (quoting *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 698 (1980)); *accord Juliano v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279, 288 (2d Cir. 2000).  By the same token, the doctrine of estoppel is inapplicable here.

**Analysis**

Defendants contend that the undisputed facts establish as a matter of law that plaintiff's disability is caused at least in part by a mental or psychoneurotic disorder.  In support of their motion, defendants submit an affidavit from Dr. Gerson stating that he reviewed plaintiff's claims

file documents and medical records from May 1989 through October of 2003; that the documentation "provided evidence that Plaintiff suffered from an impairing level of psychiatric illness"; that he "found evidence that Plaintiff suffered from Clinical Depression, Paranoia, Somatoform Disorder and Anxiety Disorder; and that plaintiff's records "indicated that he exhibited behaviors indicative of substantial psychiatric symptoms that would impair Plaintiffs ability to work."  Accordingly, Dr. Gerson concluded, plaintiff's impairment "had a significant psychological component."

Defendants also rely on records from plaintiff's treating physicians, particularly Nicholas Gonzalez, M.D.  For example, in October 1997, Dr. Gonzalez noted that plaintiff "needs psychological help, guidance and counseling"; on November 29, 1999, Dr. Gonzalez wrote that plaintiff "really needs some kind of counseling to help him adjust to his situation"; on July 10, 2000, he noted that plaintiff suffered "[p]sychological stress from being sick for so long" and "seems to be handling the situation as well as can be expected for someone who's been chronically sick since 1989"; and on June 9, 2002, he wrote that he "do[es] not believe Mr. Hine would meet the strict CDC criteria of Chronic Fatigue Syndrome."

Defendants also point to a report by Robin DaCosta, M.D, dated May 2, 2002, stating: "Prior to giving Mr. Hine a diagnosis of Multiple Chemical Sensitivity, I think further investigation would be necessary in order to determine the specific environmental exposure or insult that would cause such an illness."  Dr. DaCosta added: "At this time, I would strongly recommend further evaluation for other etiologies to his symptoms.  I would also recommend further psychiatric evaluation."

Defendants further rely on a report dated October 2, 1989, by Eric J. Drimmer, M.D., who

apparently examined plaintiff at the request of Digital. Dr. Drimmer's impression was that, although plaintiff complains of multiple chemical sensitivities, "his symptoms that he reports are quite consistent with a Major Depression with anxiety symptoms. Most likely diagnosis is Atypical Depression." Dr. Drimmer's report was based in part on a psychological evaluation performed on September 26, 1989, by Cheryl Levin, Ph.D., who stated: "While it is highly likely that this patient may be experiencing some allergic reactions or sensitivities to certain chemicals, there appears to be a strong psychological component to his complaints."

In opposition, plaintiff states in his affidavit that, beginning in 1989, his chemical sensitivity was totally physically disabling. He points to the May 1, 1989 report to Digital from his treating physician, Richard Cohen, M.D., stating the following: that plaintiff suffers "chemical hypersensitivity that has caused multiple systemic symptoms"; that "[t]hese episodes are exacerbated by exposure to tobacco, phenols, petroleum products, solvents and acrylics"; that it is "imperative that [plaintiff] minimize his exposure to these noxious stimuli"; and that it is "medically necessary" that plaintiff take an indefinite leave of absence from work. Dr. Cohen makes no mention of any psychological component to plaintiff's condition. Subsequent reports by Dr. Cohen are consistent with the May 1, 1989 report.

Plaintiff also relies on an attending physician statement in August 1994, in which Dr. Gonzalez diagnosed plaintiff as suffering from allergies and chronic fatigue syndrome, and concluded that plaintiff "cannot work at all." Dr. Gonzalez prepared a similar statement in October 1995. And on July 10, 2000, Dr. Gonzalez stated that plaintiff suffered "[p]sychological stress from being sick for so long."

Plaintiff further relies on a report by treating physician Beth A. John, M.D., dated April

12, 2001, stating that plaintiff "is totally disabled due to the chemical sensitivities and severe fatigue, and he is unable to be employed in his previous position." On July 16, 2001, a psychologist, Benjamin Hirsch, Ph.D., examined plaintiff and gave his opinion that plaintiff's emotional distress was a "direct result" of his chemical sensitivity, and that prior to the onset of his chemical sensitivity, plaintiff did not need psychotherapeutic intervention. Plaintiff also points out that neither Dr. Kipen nor Dr. Gerson examined him; rather, their opinions were based solely on the written record.

The record presents material questions of fact on the issue of whether plaintiff's total disability "is caused at least in part by a mental, psychoneurotic or personality disorder." There is competent medical evidence from which a fact-finder could conclude that plaintiff's total disability was and continues to be caused completely by a physiological condition and that any psychological problems he has are the result of – not a cause of – his disability. *Compare Reid v. Aetna Life Ins. Co.*, 393 F.Supp.2d 256, 265 (S.D.N.Y. 2005) (granting summary judgment to defendant where "the only physicians to certify Plaintiff as disabled ... cite to psychological factors for his disability."); *O'Sullivan v. The Prudential Ins. Co. of Am.*, 2002 WL 484847, *10 (S.D.N.Y.) (granting summary judgment to defendant because "no rational jury could find that [plaintiff] established how her medical condition rendered her totally disabled").

## CONCLUSION

It is therefore

ORDERED that defendants' motion (Dkt. No. 26) for summary judgment is denied, and it is further

ORDERED the parties are hereby directed to submit a joint status letter to Chief Judge

Mordue of the estimated length of trial on or before October 6, 2006.

    IT IS SO ORDERED.
    September 25, 2006
    Syracuse, New York

                                    Norman A. Mordue
                                    Chief United States District Court Judge